UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Daniel Hemmah,                         Court File No. 06 CV-3887 (JNE/JJG)

        Plaintiff,            **DEFENDANTS' MEMORANDUM OF
                                       LAW IN SUPPORT OF THEIR
vs.                                    MOTION FOR JUDGMENT
                                       AS A MATTER OF LAW,
                                       OR IN THE ALTERNATIVE,
City of Red Wing, et al,               FOR NEW TRIAL**

        Defendants.

---

## <u>INTRODUCTION</u>

Defendants City of Red Wing, Roger Seymour, and Kay Kuhlmann

("Defendants") are entitled to judgment as a matter of law, or in the alternative, to a new

trial pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Procedure on the

following grounds:

- Defendants Kuhlmann and Seymour are entitled to qualified immunity. As such, Plaintiff should not have been allowed to present his punitive damages claim.

- The evidence did not support the jury's finding that Plaintiff requested a name-clearing hearing in May, 2006.

- The evidence did not support the jury's finding that Plaintiff was denied a name-clearing hearing in May, 2006.

- The evidence did not support the jury's finding that the failure to provide a name-clearing hearing caused damage to the Plaintiff.

- The evidence did not support the jury's finding that Plaintiff was not offered a name-clearing hearing in August 2006.

- The evidence did not support the jury's finding of reckless indifference to Plaintiff's rights sufficient to support an award of punitive damages against Defendants Kuhlmann and Seymour.

- The jury verdict is so contrary to the law and the evidence that to uphold it would violate fundamental principles of fairness and result in a grave injustice.

## **BACKGROUND**

By the time of trial, Plaintiff had only one remaining claim against Defendants[1] – a violation of his post-termination procedural due process rights to a name-clearing hearing after a local newspaper published an article about his employment termination. In a trial brief submitted to the Court on June 6, 2008, and in pre-trial conferences, Defendants argued that evidence of the merits of the City's termination decision were irrelevant to this due process claim and urged the Court to prevent Plaintiff from arguing a wrongful termination case, which would only confuse the jury and result in prejudice to Defendants. Defendants argued that the evidence should be limited to whether Plaintiff requested a name-clearing hearing and, if so, whether the City denied this request. Defendants also argued that the individually named Defendants should be dismissed from this case because Plaintiff could present no evidence defeating the application of qualified immunity.

The Court agreed that evidence of the merits of the City's decision was not relevant to the due process claim and could cause confusion. The Court ordered bifurcation of the liability and damages issues but later modified the bifurcation to allow

---

[1] All of Plaintiff's other claims (data practices, defamation, malicious wrong, negligent infliction of emotional distress, tortuous interference with contract, deprivation of property interest without due process, deprivation of liberty interest without pre-termination due process) had been previously dismissed by this Court via summary judgment.

evidence in the liability phase which would only be relevant to the damages question on the truth or falsity of the stigmatizing statements contained in the termination letter.  As a result, the liability phase of trial included evidence that went beyond that relevant to the due process issues and a majority of phase one was consumed with lengthy testimony and other evidence on the merits of the termination decision itself.  The Court instructed the jury to separate the procedural due process issues from the damages questions.  However, damages evidence in the form of Plaintiff's wrongful termination case dominated the liability phase, prejudicing Defendants' case and confusing the jury as to the nature of their fact finding role.

The evidence on the elements of Plaintiff's due process claim was uncontroverted at trial. Plaintiff testified that the only communication with the City relevant to his request for a name-clearing hearing was Plaintiff's Exhibit 30.  Plaintiff testified that he wanted a hearing to address the City Council regarding his termination of employment.  A plain reading of Plaintiff's Exhibit 30 does not include any request for a hearing before the City Council.  In addition, Plaintiff specifically testified that he did not know the difference between requesting an appeal of his termination decision under the City's personnel policy and requesting a name-clearing hearing under the U.S. Constitution.

The evidence likewise did not support the jury's finding that Defendants denied Plaintiff's request for a name-clearing hearing. The only evidence presented by Plaintiff reflecting the City's response to his alleged request for a name-clearing hearing was Plaintiff's Exhibit 33.  A plain reading of Plaintiff's Exhibit 33 does not include a denial

of additional review or process.  Moreover, both Defendants Kuhlmann and Seymour testified that the first time they became aware of Plaintiff's desire for a name-clearing hearing in front of the City Council was *after* litigation was initiated.  No evidence was presented at trial to refute this testimony.

At the time the case was submitted to the jury, Defendants' motion to dismiss the individual Defendants based on qualified immunity had not been decided and their motion for a directed verdict had not been heard or decided.  At the close of evidence in the liability phase, Defendants moved for a directed verdict.  The hearing of the motion was deferred by the Court and a special verdict form was submitted to the jury which included both liability and damage-related questions. The Court did not rule on the issue of qualified immunity and, over Defendants' objections, the special verdict form included a question asking if any of the individual Defendants were involved in the decision to deny Plaintiff a name-clearing hearing.

The jury returned a liability verdict in favor of Plaintiff, finding that Plaintiff requested, but was denied, a name-clearing hearing in May, 2006.  The jury also answered four damages questions and, in doing so, determined that the stigmatizing statements contained in the termination letter were false.  Thus, the trial proceeded to the second phase – damages.

Plaintiff testified as to the emotional impact of losing his position at Red Wing and he presented evidence of a $13,000 loss in severance benefits for failure to leave the City in good standing, $28,600 in pension benefits for being forced to retire from the Red

Wing volunteer fire department, and evidence of a failed job search (a series of rejection letters from other employers). Importantly, Plaintiff admitted that he had no evidence to establish that he would have received the severance, continued on in the fire department, or that he would have been offered a job by another employer had he received a name-clearing hearing in front of the City Council in May, 2006 or that his non-selection for any of the positions for which he applied was the result of the statements about him in his termination letter.

Prior to trial, Defendants brought a motion in limine for the exclusion of evidence related to damages occurring after August, 2006 based on the offer of a name-clearing hearing extended to Plaintiff and his rejection of it at that time. This motion was denied. However, the facts of the August, 2006 offer and Plaintiff's rejection of it were admitted into evidence. This evidence is contained is Defendants' Exhibits 21 and 22.

Before the question of damages was presented to the jury, Defendants objected to any questions on the special verdict form assessing damages against the individual Defendants based on qualified immunity which should have precluded any jury consideration of liability or damages against them. Over Defendants' objection, the jury was allowed to consider damages against the individual Defendants.

The jury returned a damages verdict in favor of Plaintiff finding that the greater weight of evidence proved more than nominal damages and awarding Plaintiff $100,000 for actual damages from May, 2006 to August 2006; and, after finding that the City did not offer Plaintiff a name-clearing hearing in August, 2006, awarding another $150,000

for actual damages to the date of trial.  Finally, the jury found that while Defendants

Kuhlmann and Seymour were not motivated by evil motive or intent, they were both

recklessly indifferent to Plaintiff's rights and awarded punitive damages in the amounts

of $10,000 and $5,000 respectively.

## ARGUMENT

## I.      STANDARD OF REVIEW.

A motion for judgment as a matter of law (formerly motion for judgment

notwithstanding the verdict) presents the legal question of "whether there is sufficient

evidence to support a jury verdict." *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992).[2]

Judgment as a matter of law is appropriate when all the evidence points one way and is

"susceptible of no reasonable inference sustaining the position of the nonmoving party."

*Id*. In reviewing a motion for judgment as a matter of law, the Court must: (1) resolve

direct factual conflicts in favor of the non-movant, (2) assume as true all facts supporting

the non-movant which the evidence tended to prove, (3) give the non-movant the benefit

of all reasonable inferences, and (4) deny the motion if the evidence so viewed would

allow reasonable jurors to differ as to the conclusions that could be drawn; that is, if there

is substantial evidence--more than a mere scintilla--to support a verdict in favor of the

party opposing the motion. *City Nat'l Bank of Fort Smith v. Unique Structures, Inc.,* 929

F.2d 1308, 1312 (8th Cir.1991).

---

[2] As noted in *Keenan v. Computer Assocs., Int'l, Inc.,* 13 F.3d 1266, 1268 n. 2 (8th Cir.1994) and *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1400 n. 1 (8th Cir.1994), a motion for judgment as a matter of law "now encompasses all motions denominated as motions for a directed verdict or for judgment notwithstanding the verdict." *See* Fed.R.Civ.P. 50 (commentary to 1991 Amendment).

With respect to motions for new trial, the question is whether the verdict is against the weight of the evidence. "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence -- it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" *White v. Pence*, 961 F.2d at 780, *quoting Ryan v. McDonough Power Equip.,* 734 F.2d 385, 387 (8th Cir.1984) (citation omitted). *See also Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1266 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v. "Regardless of the rhetoric used the true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 187 (8th Cir. 1972), *quoting Cities Service Oil Co. v. Launey,* 403 F.2d 537, 540 (1968).

On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable. *See White v. Pence,* 961 F.2d at 780-81.  A new trial is appropriate if the

verdict is against the weight of the evidence and if allowing it to stand would result in a

miscarriage of justice. *See Shaffer v. Wilkes,* 65 F.3d 115, 117-18 (8th Cir.1995).


**II.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY TO A NEW TRIAL BECAUSE THE JURY VERDICT IS UNSUPPORTED BY AND CONTRARY TO THE EVIDENCE.**

    **A.    The Evidence Supports Defendants Kuhlmann and Seymour Are Entitled to Qualified Immunity**

The evidence in the record clearly establishes that Defendants Kuhlmann and

Seymour are entitled to qualified immunity. Qualified immunity protects public officials

who carry out executive and administrative functions from personal liability so long as

their actions do not violate "clearly established [federal] statutory rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Rights are clearly established when "a reasonable official would understand that what he

is doing violates that right . . . [I]n light of pre-existing law the unlawfulness must be

apparent." *Schleck v. Ramsey County*, 939 F.2d 638, 641 (8th Cir. 1991) (*quoting

Anderson v. Creigton*, 483 U.S. 635, 640 (1987)). The defense of "qualified immunity"

requires courts to enter judgment in favor of a government employee unless the

employee's conduct violates "clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow*, 457 U.S. 800, 818. The

official's conduct is judged by an objective reasonableness test. *Id.* This reasonableness

standard protects "all but the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Significantly, qualified immunity is intended to provide not merely an immunity from liability, but an "immunity from suit" and the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

At trial, evidence established that, after his termination, Plaintiff pursued an appeal procedure under the City's personnel policy. Plaintiff was seeking to have a reversal of the termination decision and was pursuing his appeal rights because he was under the mistaken impression he had a right to post termination arbitration. Defendants Kuhlmann and Seymour testified that they understood Plaintiff to be an "at will" employee who was pursuing a grievance appeal procedure as spelled out in City policies. At no time did either Kuhlmann or Seymour have information that Plaintiff was requesting a procedure outside of this appeal process. No evidence at trial supported that either Defendant was aware Plaintiff was requesting a name-clearing hearing in front of the City Council as argued by Plaintiff's counsel at closing argument.[3] Indeed, Plaintiff's Exhibit 30, the letter Plaintiff identified at trial as constituting his request for a name-clearing hearing, does not mention anything about requesting a meeting with the City Council. Given the history of the grievance appeals process, and Plaintiff's assertion of a right to arbitration,

---

[3] In closing argument, Plaintiff's counsel argued the mere fact that Kuhlmann discussed Plaintiff's Exhibit 30 with Seymour and the City's attorney before responding was proof of a knowing violation of Plaintiff's due process rights. The evidence reflects otherwise – including Plaintiff's own testimony that he believed Kuhlmann and Seymour were merely attempting to follow the City's appeal policies to the best of their abilities. Indeed, this Court had already reviewed the undisputed evidence concerning the post termination decisions of Kuhlmann and Seymour and found no evidence to support that either Defendant neither acted outside of their job duties nor did either act with malice or ill will. *See February 26, 2008 Court Order.* Malice is a requisite showing to avoid a bar of qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). In addition, Kuhlmann's testimony that she would not allow Plaintiff to present his appeal to the council is not evidence of a denial of a required constitutional procedure as also argued by Plaintiff's counsel. Kuhlmann's conclusions are supported by the City personnel policies and her own understanding of the council administrator's authority over final personnel decisions. No manipulation of this evidence through passionate argument by Plaintiff's counsel can justify a finding of a knowing violation of rights sufficient to defeat the application of immunity.

nothing in Plaintiff's Exhibit 30 would put a reasonable public official on notice that a liberty interest name-clearing process was being requested.

In addition, the established law for liberty interest claims states the employer's release of a public stigmatizing statement in connection with a termination decision is what triggers an employee's right to due process.  In the present case, Kuhlmann and Seymour knew that the City did not release a statement as part of its termination process. The investigative interview of Plaintiff was conducted *in private*; Kuhlmann's decision to terminate was conveyed to Plaintiff *in private*; the termination letter was hand-delivered to Plaintiff *in private*.  Plaintiff's argument in this case that the public release requirement is met because the City complied with its legal obligations in responding to a request by the local newspaper for public data has never been addressed by the courts.  When the official's conduct presents a matter of first impression in the circuit, they are usually entitled to qualified immunity because the law was not clearly established. *See Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1125-26 (11th Cir. 1992) (granting officials qualified immunity because their actions of placing stigmatizing information in publicly-accessible file had not yet been deemed by the Eleventh Circuit public dissemination requiring a name-clearing hearing); *see also Noyer v. Carlson*, 2006 WL 2735246, at *8 (D. Minn. Sept. 25, 2006) (finding that interest was not clearly established because, among other things, the issue was one of first impression). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (*quoting Maciariello v. Sumner*, 973

F.2d 295, 298 (4th Cir. 1992)).  Kuhlmann and Seymour crossed no bright lines in this

case and both are entitled to qualified immunity.  As a result, the jury findings on liability

and damages should be reversed and judgment entered in favor of Defendants Kuhlmann

and Seymour.

     **B.    The Evidence Did Not Support That Plaintiff's Liberty Interest was Violated As a Matter of Law.**

         **1.    No public statement released in connection with Plaintiff's termination**

The law is well established in the Eighth Circuit that a plaintiff is not entitled to a

name-clearing hearing for a deprivation of liberty unless certain factors are met. One

crucial requirement is that the allegedly stigmatizing statement be made in public in

connection with a termination of employment. *Brown v. Simmons*, 478 F.3d 922, 923 (8th

Cir. 2007); *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir. 1993) ("To establish

protected liberty interests, plaintiffs were required to establish that a city official, *in

connection with discharging* plaintiffs, *publicly* made allegedly untrue charges against

them . . . .")  (emphasis added).  It is Defendants' position that Plaintiff failed to prove

this essential element of his claim because the City's release of allegedly stigmatizing

information was not voluntary and was not made in connection with Plaintiff's

termination.  Instead, the City's release was in specific response to a proper MGDPA

request made by the local newspaper under the Minnesota Government Data Practices

Act (MGDPA), Minn. Stat. § 13.01 et seq.  This Court expressly held that the City's

release was proper when it granted summary judgment on this claim.  At summary

judgment and in pre-trial submissions, Defendants argued that this legal issue must be decided before Plaintiff can proceed with his due process claim. Because the evidence at trial clearly established that the City did not voluntarily release a stigmatizing statement about Plaintiff in connection with its termination decision, judgment as a matter of law should be entered in favor of Defendants.

Plaintiff's termination and the release of public information about his termination were two distinct acts lacking any connection. Although not yet addressed by the Eighth Circuit, other circuits have looked to the nature of the release in evaluating due process liberty interest claims. The Sixth and Fifth circuits have concluded that the public employer must have acted *voluntarily* in releasing stigmatizing information about an employee in connection with a termination decision; public dissemination for due process purposes does not occur if the dissemination is not voluntary. *See, e.g.*, *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) ("Lastly, the public dissemination must have been voluntary."); *Arrington v. County of Dallas*, 970 F.2d 1441, 1447 n.4 (5th Cir. 1992) (stating that plaintiff "has failed to present sufficient proof that any *voluntary* act of Richardson caused these charges to be published.") (emphasis added).

At trial, Plaintiff asserted that the stigmatizing statements at issue were solely limited to information contained in the termination letter, Plaintiff's Exhibit 18. As previously indicated, this Court has held as a matter of law Plaintiff's Exhibit 18 constitutes public data pursuant to the MDGPA, Minn. Stat. § 13.01 et seq. Thus, this Court held the City was legally required to release the termination letter upon request.

There was no evidence presented that the City released this information voluntarily or on its own accord.  Instead, City officials and the newspaper reporter himself testified that the City of Red Wing has no process or history of automatically releasing public personnel data in connection with an employment termination, and that Plaintiff's termination letter was only released because the City was legally obligated to do so under state law.  Thus, the release was clearly not voluntary and, as such, does not trigger constitutional protections of due process.  To hold otherwise would have the absurd result of any mandatory release of public data regarding potentially stigmatizing reasons for an employee's termination triggering the constitutional requirement of a name-clearing hearing.  Since a data request could occur months or even years after the termination decision, it is clearly not the type of public release contemplated by the Constitution. Therefore, judgment on Plaintiff's claim should be entered in favor of Defendants.

### 2.   No request for a name-clearing hearing

The Eighth Circuit recently held that a plaintiff who claims he was denied procedural due process based on a liberty interest must first ask for and be denied a name-clearing hearing in order to assert a meritorious claim. *Winskowski v. City of Stephen*, 442 F.3d 1107, 1110-11 (8th Cir. 2006). Although a plaintiff does not have to specifically ask for a name-clearing by name, he must at least provide sufficient information to put the employer on notice that the employee is requesting a name-clearing hearing. *See Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006); *Quinn v. Shirey*, 293 F.3d 315, 324-25 (6th Cir. 2002).

At trial, no evidence was presented showing Plaintiff made any sort of request for a name-clearing hearing that would have put the City on notice.  Again, Plaintiff clearly admitted the evidence of this request is limited to Plaintiff's Exhibit 30.  Based on a plain reading of Plaintiff's Exhibit 30, City officials had no information to alert them that Plaintiff was allegedly requesting a process in connection with his *liberty* interest as opposed to a process in connection with his claimed *property* interest in employment.  Plaintiff testified that he was seeking a reversal of his termination under City policies and, at the time, believed he was entitled to arbitrate his grievance.  Plaintiff even admitted under oath that he did not know the difference between a grievance appeal hearing and a name-clearing hearing as defined by the U.S. Constitution.  Plaintiff's lack of clarity was echoed by City officials who testified they believed Plaintiff was pursuing his grievance appeal rights – not asking for a name-clearing process.

Moreover, even a letter stating that a plaintiff was denied "due process of law" is not sufficient to claim a name-clearing hearing when the plaintiff brings both liberty and property interest claims. *See Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 411 (6th Cir. 1997).  Therefore, the jury's finding in this case that Plaintiff requested a name-clearing hearing is simply not supported by the evidence or the applicable law. *See Ludwig v Bd. of Trustees of Ferris State Univ.,* 123 F.3d 404 (6th Cir. 1997) (Where employee's letter to employer did not indicate whether her complaint of lack of due process applied to her challenge for loss of a property interest or loss of a liberty interest, court found no request made for a name-clearing hearing); *Bledsoe v. City of Horn Lake*,

449 F.3d 650, 653 (5th Cir. 2006) (an employee must petition the employer in a manner

that can be construed as asking for an opportunity to clear his name); *Winskowski*, 442

F.3d at 1111 (an employee who fails to request a post-termination process cannot later

sue for having been deprived of it).

### 3.      No denial of a name-clearing hearing

Plaintiff alleged that the City deprived him of a liberty interest without due

process by not providing him with a proper name-clearing hearing.  Even if Plaintiff had

properly requested a name-clearing hearing, the evidence did not support the jury's

conclusion that Plaintiff was denied a constitutionally sanctioned process.  A public

employee has the right to a name-clearing hearing at a meaningful time if his termination

is accompanied by publication of stigmatizing reasons for his termination that might

impair future employment opportunities.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

532 (1985).   In this case, Plaintiff was offered the opportunity to submit additional

information regarding the allegations against him.  Defendant Kuhlmann's response to

Plaintiff on May 31, 2006, clearly provided Plaintiff with this opportunity.  (Plaintiff's

Exhibit 33.)  This response satisfied the requirement of providing a name-clearing

hearing as a matter of law.  *Schleck v. Ramsey County*, 939 F.2d at 643-644. *See Bd. of

Regents v. Roth,* 408 U.S. at 573 (If University employee Roth's liberty interest were

implicated because he was denied re-employment based on the University's publication

of sufficiently serious charges; "[in] such a case, due process accords an opportunity to refute the charge *before University officials.*") (emphasis added). *Roth,* 408 U.S. at 574, (The Supreme Court has held that a state cannot foreclose a range of opportunities in a manner that contravenes due process in a manner that denies the right to a full prior hearing.), *citing Willner v. Committee on Character,* 373 U.S. 96, 103 (1963) and *Cafeteria Workers v. McElroy,* 367 U.S. 886, 898 (1961).

Moreover, based on the evidence and testimony as applied to the law on what constitutes a constitutionally sufficient name-clearing hearing, the record is clear and undisputed that Plaintiff took advantage of a reasonable opportunity to clear his name when he granted an interview to the newspaper.  It is undisputed that the forum of the alleged stigmatizing statements was an article about Plaintiff's termination published in the local newspaper.  Plaintiff was given a full opportunity to respond to the reasons for his termination and the reporter's questions before publication.  Indeed, Plaintiff and two of the state officials involved in the misconduct investigation were quoted in this article. This interview and Plaintiff's response and rebuttal of his termination went to a far broader audience than a City Council meeting.  Therefore, although not constitutionally required, Plaintiff was given two opportunities to "clear his name" – by the opportunity to submit additional information to Ms. Kuhlmann and by responding to the public statements made in the newspaper account of his termination.   Thus, the evidence presented does not support a finding of a denial of a name-clearing hearing.

**C.    The Evidence Did Not Support the Jury's Conclusion That The Denial of a Name-Clearing Hearing Caused Compensable Harm to the Plaintiff.**

Compensatory damages may be awarded for a violation of procedural due process only for the *actual injuries* suffered from a deprivation of due process. Absent proof of actual injuries, only nominal damages may be awarded. *Carey v. Piphus*, 435 U.S. 247, 248 (1978). Here, the evidence presented did not support the jury's verdict awarding compensatory damages to Plaintiff in the amount of $250,000.

The Supreme Court in *Carey v. Piphus,* held that the proper measure of damages for a constitutional injury must be evaluated against the nature of the constitutional right in question. 435 U.S. 247, 264-65. Application of the *Carey* damage rule requires that the Court take into account the nature of the constitutional injury sustained in determining whether the injury supports an award of damages. *Id.; Skeets v. Johnson*, 805 F.2d 767, 774 (8th Cir. 1986). In *Carey,* the Supreme Court rejected the plaintiffs' argument that damages may be "presumed" to flow from a denial of procedural due process similar to presumed damages in defamation per se cases. *Id.* Instead, the court held that a plaintiff must present evidence of actual injury sustained in order to recover compensatory damages. *Id.*

At trial, Plaintiff testified that he suffered economic loss and pain and suffering as a result of losing his long-time job at the City of Red Wing. Plaintiff did not testify to any damages he allegedly suffered as a direct result of failing to receive a name-clearing hearing after stigmatizing charges were made public in the newspaper – charges which

Plaintiff publically denied and was given the opportunity of a timely published response. As the Supreme Court stated in *Carey v. Piphus*, before a plaintiff can receive actual damages for a deprivation of due process, he must show that those damages flowed from the deprivation. *Carey*, 435 U.S. at 259-64.

In this case, Plaintiff testified that while he was depressed about being terminated and has had difficulty finding another job, he did not present *any* evidence that he suffered any economic loss or emotional distress as a result of being denied a name-clearing hearing. *See Id.*, 435 U.S. at 263 ("Here the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities.").

Plaintiff presented evidence of a $13,000 loss in severance benefits for failure to leave the City in good standing, $28,600 in pension benefits for being forced to retire from the Red Wing volunteer fire department, and evidence of a failed job search (a series of rejection letters from other employers). However, Plaintiff readily admitted that he had no evidence to establish that he would have received the severance, continued on in the fire department, or that he would have been offered a job by another employer[4] had he received a hearing in front of the City Council in May, 2006.

_____

[4] Plaintiff failed to present evidence showing any of the potential employers even knew about the stigmatizing charges. The City did not send the termination letter to any person or organization. It flows to reason that a public hearing in front of the Red Wing City Council denying those charges would have no bearing on these employers' hiring decisions. It is also worth noting that Plaintiff's testimony to the one potential employer's disqualification decision based on Plaintiff's "termination for misconduct" is misleading. The employer, a nuclear power plant, initially denied Plaintiff continuing employment finding him ineligible for a "nuclear access authorization" because he was "fired from the City of Red Wing for misconduct." The finding was reversed after Plaintiff appealed. Plaintiff is currently eligible to "reapply for an NMC nuclear access authorization." Importantly, no causation can be established because the employer did not have a copy of Plaintiff's termination letter; the evidence merely

In sum, nothing in the record supports the jury's finding that Plaintiff suffered actual economic loss or emotional distress damages as a result of being denied a name-clearing hearing before the Red Wing City Council in May, 2006.  Therefore, the jury verdict is contrary to law and is unsupported by the evidence and must either be reversed or subject to remittitur.

In addition, the jury findings regarding the offer of a name-clearing hearing in August, 2006 and the award of $150,000 damages for the time period of August, 2006 to the time of trial are not supported by the law or evidence.  Defendants' Exhibits 21 and 22 reflect the undisputed facts that a name-clearing hearing before the Red Wing City Council was offered to Plaintiff just four months after his employment termination. Plaintiff testified at trial that he did not accept the offer of a hearing at that time because he had already hired an attorney and had decided to pursue litigation against the City. Plaintiff is not entitled to damages beyond August, 2006 because he failed to mitigate his alleged injuries.   An employee denied procedural due process has a duty to mitigate his injury.  *See Hill v. City of Pontotoc*, 993 F.2d 422, 426-27 (5th Cir. 1993).   The jury award of $150,000 for actual damages suffered after he was offered a name-clearing hearing that he rejected is clearly contrary to law and unsupported by the evidence.

As such, Defendants are entitled to judgment in their favor or a new trial on the damages issue, or in the alternative, to remittitur. Remittitur is within the trial court's

---

showed that Plaintiff was rejected because he reported on his application form that he was terminated for "misconduct."  Plaintiff was not rejected because of the City's findings that Plaintiff engaged in dishonesty or deceit. *See Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994) ("[G]eneral allegations of misconduct and insubordination d[o] not rise to the requisite level of constitutional stigma.").

discretion when a motion for a new trial is made under the rules of civil procedure.

Minnesota case law supports remittitur when "[e]xcessive or insufficient damages

[appear] to have been given under the influence of passion or prejudice * * *."

Minn.R.Civ.P. 59.01(5); *See Jangula v. Klocek,* 284 Minn. 477, 488, 170 N.W.2d 587,

594 (1969); *Young v. Hansen,* 296 Minn. 430, 435, 209 N.W.2d 392, 395 (1973).

### D.   The evidence did not support a finding that Defendants Kuhlmann and Seymour were recklessly indifferent to Plaintiff's rights to support a punitive damages award.

Punitive damages may be awarded in a Section 1983 action against a state or local

official when the official's "conduct is shown to be motivated by evil motive or intent, or

when it involves reckless or callous indifference to the federally protected rights of

others. *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Punitive damages  may be awarded if

there is a showing that the "defendant actually derived[d] satisfaction from hurting the

plaintiff" or if the "defendant, while not having any particular desire to hurt the plaintiff,

trample[d] on the plaintiff's rights, in a fashion that can fairly be called reckless, to

accomplish his own aims." *Soderbeck v. Burnett County*, 752 F.2d 285, 289 (7th Cir.),

*cert.denied,* 471 U.S. 1117 (1985).  It is not enough that a defendant acted in an

objectively unreasonable fashion.  Rather, "an award for punitive damages requires an

assessment of [the defendant's] subjective state of mind.  *Wulf v. City of Wichita*, 883

F.2d 842, 867 (10th Cir. 1989).

In this case, the law as previously set forth establishes that Defendants Kuhlmann

and Seymour are entitled to qualified immunity and thus punitive damages against them

are improper and cannot be sustained.  Even if qualified immunity did not attach,

however, an award of punitive damages is still improper in this case.  *See McCardle v.*

*Haddad*, 131 F.3d 43 (2d. Cir. 1997) (although defendant police officer's warrantless

search violated clearly established Fourth Amendment law, the plaintiff was not entitled

to a punitive damages instruction).   At most, the evidence supports that Kuhlmann and

Seymour were confused about Plaintiff's request to submit additional information after

his grievance appeals process was concluded.  No evidence was presented showing that

either defendant knowingly and willingly "trampled on" Plaintiff's right to a name-

clearing hearing; a right that Plaintiff himself testified he was unclear about.  Therefore,

the jury award of punitive damages must be reversed.  Passion, prejudice and confusion

are the only explanation of the jury's punitive damages, excessive award and overall

verdict – a verdict that cannot and should not stand.

## CONCLUSION

Based upon the foregoing, Defendants request that Defendants' Motion for

Judgment as a Matter of Law is granted in its entirety and judgment entered in favor of

the Defendants on all claims and awarding Defendants all of their reasonable costs and

attorney fees to be determined; or in the alternative, for a new trial.

Respectfully submitted,

LEAGUE OF MINNESOTA CITIES

Date: July 11, 2008                    **s/ Patricia Y. Beety**
                                       Patricia Y. Beety (#227390)
                                       145 University Avenue West

St. Paul, MN 55103
(651) 281-1270
Attorney for Defendants