UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel Hemmah,

    Plaintiff,

v.                                                    Civil No. 06-3887 (JNE/JJG)
                                                      ORDER
City of Red Wing, Kay Kuhlmann,
and Roger Seymour,

    Defendants.

On June 20, 2008, a jury found Defendants City of Red Wing, Kay Kuhlmann, and Roger

Seymour liable to Plaintiff Daniel Hemmah on Hemmah's claim under 42 U.S.C. § 1983 (2000)

for deprivation of a liberty interest without due process, *i.e.*, failure to provide Hemmah with a

name-clearing hearing after terminating his employment and disclosing stigmatizing accusations

against him.  The jury awarded Hemmah $250,000.00 in compensatory damages, $10,000.00 in

punitive damages against Kuhlmann, and $5,000.00 in punitive damages against Seymour.  The

case is before the Court on the parties' post-trial motions.

## I.  DEFENDANTS' MOTION

Defendants seek judgment at a matter of law or, alternatively, a new trial.  In addition,

Defendants, in their memorandum, argue for remittitur.

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court
> finds that a reasonable jury would not have a legally sufficient evidentiary basis to
> find for the party on that issue, the court may:  (A) resolve the issue against the
> party; and (B) grant a motion for judgment as a matter of law against the party on
> a claim or defense that, under the controlling law, can be maintained or defeated
> only with a favorable finding on that issue.

A party may renew a Rule 50 motion after trial.[1]  Fed. R. Civ. P. 50(b).  In ruling on a renewed motion when a verdict has been returned, the court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1)-(3).  When considering a post-trial motion for judgment as a matter of law, the court determines "whether the record contains sufficient evidence to support the jury's verdict."  *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 845 (8th Cir. 1998).  The court views the evidence in the light most favorable to the non-moving party and grants the non-moving party the benefit of all reasonable inferences.  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 899-900 (8th Cir. 2006).  A judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1); *see also Canny*, 439 F.3d at 899-900.

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  A new trial is justified if the verdict is "against the great weight of the evidence."  *See Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).  A new trial should be granted only where it is necessary to prevent a miscarriage of justice.  *Bass*, 150 F.3d at 845; *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994).  In determining whether a verdict is against the great weight of the evidence, the court may weigh the evidence,

---

[1]     Hemmah argues that Defendants may not now seek judgment as a matter of law because they did not properly move for judgment as a matter of law during the course of trial.  *See* Fed. R. Civ. P. 50(b) (indicating that, in order to make a motion for judgment as a matter of law under Rule 50(b) after trial, a motion for judgment as a matter of law must be made under Rule 50(a) before the case is submitted to the jury).  Defendants moved for judgment as a matter of law at the close of Hemmah's case on liability, at the close of Defendants' case on liability, and at the close of Defendants' case on damages.  In each instance, the Court acknowledged Defendants' motion and deferred argument.  The Court concludes that Defendants' present Rule 50(b) motion is proper.

disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). "The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984).

When a jury awards excessive damages, a court may order remittitur, compelling the plaintiff to choose between accepting a reduction in the award or a new trial. *See, e.g.*, *United States v. 47.14 Acres of Land*, 674 F.2d 722, 728 (8th Cir. 1982). Remittitur should be ordered "only in cases where the jury's award is so grossly excessive as to shock the court's conscience." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 496 (8th Cir. 2002) (quotation marks omitted). The decision whether to grant a motion for remittitur is entrusted to the discretion of the trial court. *EEOC v. Convergys Customer Mgmt. Group, Inc.*, 491 F.3d 790, 797 (8th Cir. 2007).

## A.    Publication of stigmatizing charges

To prevail on a claim for denial of a name-clearing hearing, a public employee must show (1) "that the public employer's reasons for the discharge stigmatized the employee, seriously damaging his or her reputation or by foreclosing other employment opportunities," *Hammer v. City of Osage Beach*, 318 F.3d 832, 839-40 (8th Cir. 2003), (2) "that the employer made the reasons for the discharge public," *id*. at 340, (3) "that the employee denied the charges that led to the discharge," *id.*, and (4) that the employee requested a name-clearing hearing before commencing litigation, *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006). Defendants argue that Hemmah cannot establish the publication element of his claim. In an Order dated April 26, 2007, the Court held that the letter containing stigmatizing allegations against Hemmah is public data subject to disclosure under the Minnesota Government Data

Practices Act (MGDPA), *see* Minn. Stat. § 13.43, subd. 2(a)(5) (2006), and Defendants assert

that disclosure pursuant to the MGDPA cannot constitute publication for purposes of Hemmah's

claim for denial of a name-clearing hearing.

 Case law on this issue is limited, and even the few cases decided on similar facts devote

little attention to the possibility that legally required disclosure might immunize a public

employer from liability.  Only one circuit, the Sixth Circuit, has held that allegations against a

public employee that are disseminated pursuant to state disclosure requirements may not form

the basis of a claim for denial of a name-clearing hearing.  *See Kendall v. Bd. of Ed.*, 627 F.2d 1,

5 (6th Cir. 1980), *abrogated on other grounds by Duchesne v. Williams*, 849 F.2d 1004, 1008

(6th Cir. 1988); *Hade v. City of Fremont*, 246 F. Supp. 2d 837, 846 (N.D. Ohio 2003) ("When

the defendant's reasons for terminat[ing a public employee] are publicly disseminated by a

requirement of law, however, the Sixth Circuit has ruled that defendants cannot be said to have

voluntarily disseminated the information." (citing *Kendall*, 627 F.2d at 6)).

 In contrast, other circuits have concluded that the publication element of a claim for

denial of a name-clearing hearing is satisfied if the stigmatizing charges are contained in

documents that become public through operation of state law.  *See Cox v. Roskelley*, 359 F.3d

1105, 1112 (9th Cir. 2004) ("We now hold explicitly that placement of the stigmatizing

information in Cox's personnel file, in the face of a state statute mandating release upon request,

constituted publication sufficient to trigger Cox's liberty interest under the Fourteenth

Amendment."); *Buxton v. City of Plant City*, 871 F.2d 1037, 1045 (11th Cir. 1989) ("Because the

information in the file may be reviewed years after it is filed, its publication, for due process

purposes, must be held to occur at the time of filing."); *cf. Koerpel v. Heckler*, 797 F.2d 858,

861, 865-66 (10th Cir. 1986) (indicating implicitly that, where actual publication and not mere

4

availability of stigmatizing charges will be required by law, the publication element of a claim

for denial of a name-clearing hearing is satisfied though actual publication has not yet occurred).

*Compare Burton v. Town of Littleton*, 426 F.3d 9, 18 & n.6 (1st Cir. 2005) (indicating that

placement of stigmatizing allegations in a personnel file is not sufficient to establish publication

and that actual dissemination is required, but stating in dicta that if the defendants "were

obligated to release the document, this would be a different case"), *with Dasey v. Anderson*, 304

F.3d 148, 156 (1st Cir. 2002) ("Absent dissemination—the means by which an employee's

reputation might be threatened with serious harm—a terminated public employee has no

constitutional right to a name-clearing hearing.").

      The remaining circuits do not appear to have directly addressed the effect of a public

employer's inability to keep stigmatizing allegations confidential due to laws mandating

disclosure.  Those circuits have, however, articulated several different standards regarding what

is required to establish publication.  For example, some circuits require actual disclosure of the

stigmatizing charges.  *See McMath v. City of Gary*, 976 F.2d 1026, 1035 (7th Cir. 1992)

("Information kept within the department—and, specifically, within McMath's personnel file—

may indeed be a 'ticking time bomb,' but until the time bomb explodes—*i.e.*, until the

information is disseminated—there is no publication and no constitutional tort." (citation

omitted)); *Chabal v. Reagan*, 841 F.2d 1216, 1223-24 (3d Cir. 1988) ("We have made it clear

that a protected liberty interest is not implicated if the government did not in fact disseminate any

allegedly stigmatizing information to the public.").  Other circuits have concluded that

publication requires only proof of likelihood of disclosure.  *See Sciolino v. City of Newport

News*, 480 F.3d 642, 650 (4th Cir. 2007) ("We thus hold that an employee must allege (and

ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply)

or the public at large will inspect the file."); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996) ("This [publication] requirement is 'satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers.'"); *In re Selcraig*, 705 F.2d 789, 796 n.6 (5th Cir. 1983) ("[A] public employee must show that his employer has made or is likely to make the allegedly stigmatizing charges public 'in any official or intentional manner." (quotation marks omitted)). The question seems not to be settled in the Eighth Circuit. *Compare Hogue v. Clinton*, 791 F.2d 1318, 1322 n.7 (8th Cir. 1986) ("That 'Hogue's personnel file is replete with wrongdoing,' however, may be a sufficient publication if the defendants made that file available to prospective employers."), *with Raposa v. Meade Sch. Dist.*, 790 F.2d 1349, 1354 (8th Cir. 1986) (affirming summary judgment for the defendants where, among other things, the defendant's personnel file contained written complaints but the defendant did "not allege, nor did she prove, that her files were provided to any other school").  In any event, neither application of the actual disclosure standard nor application of the likelihood of disclosure standard resolves the question of whether disclosure of stigmatizing charges pursuant to the MGDPA constitutes publication for purposes of Hemmah's claim.

The Court proceeds, then, to resolve what appears to be an open question of law.  As an initial matter, state law may not create immunity from liability under section 1983.  *See Felder v. Casey*, 487 U.S. 131, 139 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted . . . because the application of the state immunity law would thwart the congressional remedy . . . which of course already provides certain immunities for state officials."); *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983

. . . cannot be immunized by state law.  A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.").  Moreover, Defendants fail to adequately explain how the duty of disclosure imposed by the MGDPA undermines Hemmah's claim.  When disclosure of stigmatizing allegations is legally required, a public employer may intuitively seem less blameworthy for that disclosure.  In a claim such as Hemmah's, it is not the disclosure—whether that disclosure is legally required or not—that violates an individual's constitutional rights; it is the denial of due process.  *See Sciolino*, 480 F.3d at 649 ("[T]he constitutional harm is not the defamation itself; rather it is the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge." (quotation marks omitted)); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) ("[P]ublic officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged."); *cf. Hammer*, 318 F.3d at 840 ("All that is required is that the aggrieved party be offered a chance to refute the charges against him or her.").  While the MGDPA required disclosure of the charges against Hemmah, it did not prevent Defendants from affording Hemmah the process to which he was entitled.  *Cf. Donato*, 96 F.3d at 633 ("When the state makes stigmatizing allegations in the course of dismissing an employee, such action implicates the protections of the Fourteenth Amendment, and we must enforce the Constitution even when the state is perhaps thereby burdened by having to recalibrate its employment practices.").  Accordingly, the Court rejects Defendants' assertion that Hemmah cannot prevail because disclosure of the stigmatizing charges against him was made pursuant to the MGDPA.

**B.      Request for a name-clearing hearing**

Defendants argue that Hemmah has not established that he requested a name-clearing hearing before filing suit.  *See Winskowski*, 442 F.3d at 1112.  In an Order dated February 26, 2008, the Court held that a reasonable jury could conclude that "Hemmah's request to submit information to contest assertions made in his termination letter could be construed as a request for an opportunity to clear his name."  At trial, the jury found that Hemmah requested a name-clearing hearing in May 2006.  The Court concludes that the jury's verdict on this point is supported by sufficient evidence.  *Cf. Rosenstein*, 876 F.2d at 396 ("A discharged employee need not use the term 'name-clearing hearing.'").

**C.      Denial of name-clearing hearing in May 2006**

Defendants argue that Hemmah has not established that Defendants refused his request for a name-clearing hearing.  On May 31, 2006, after Hemmah had communicated his belief that the charges against him were false, Kuhlmann wrote Hemmah a letter that stated:

> I have denied your appeal and City policy does not provide for an appeal to the Council or for any other level of appeal beyond my determination.  However, I will consider any additional information that you provide to me.
>
> No adjustments are necessary or appropriate, and your appeal process is again concluded.

It is undisputed that Hemmah never received a name-clearing hearing.  The Court concludes that the jury's verdict regarding denial of a name-clearing hearing in May 2006 is supported by sufficient evidence.

D.    **Qualified Immunity**

Defendants Kuhlmann and Seymour[2] seek judgment as a matter of law on the ground that they are protected by qualified immunity.[3]  The doctrine of qualified immunity shields state actors performing discretionary functions from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A right is clearly established only if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." (quotation marks omitted)).  It is not necessary that there "be a case decided on all fours with the present factual circumstances," and instead "it need only be apparent from pre-existing law that the conduct is unlawful."  *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001).  The standard for determining whether qualified immunity is applicable is an objective one.  *Schleck v. Ramsey County*, 939 F.2d 638, 641 (8th Cir. 1991).

While the right to a name-clearing hearing is clearly established under some circumstances, *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008), the Court concludes that Hemmah's right was not clearly established in this case and that, consequently, Defendants Kuhlmann and Seymour are entitled to qualified immunity.  First, the Court holds that it was not clearly established that a public employee is entitled to a name-clearing hearing

---

[2]    Qualified immunity is available only to individuals, not municipalities. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007).

[3]    While the availability of qualified immunity should normally be determined long before trial, *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000), Defendants first asserted qualified immunity in an oral motion at the beginning of the first day of trial.

when the defendant employer is legally required to disclose the stigmatizing allegations against the employee.  As discussed above, at least six circuits, including the Eighth Circuit, do not appear to have ruled on this issue, and the other circuits are divided.  *Cf. United States v. Lanier*, 520 U.S. 259, 269 (1997) (indicating that a court may take a circuit split into account in determining whether a right is clearly established).

Second, the Court concludes that Hemmah's request for a name-clearing hearing was insufficiently clear to apprise reasonable officials of his desire for such a hearing.  Hemmah's request was contained in a letter to Kuhlmann dated May 16, 2006:

> I received your letter today replying to my appeal to rescind my termination as Public Works Deputy Director—Utilities and as a Paid on Call Firefighter.  You have denied my appeals for both positions.  Your letter also states that my appeal did not provide any new information to consider.
>
> I want to let you know I am preparing a detailed summary that will be submitted for review.  I have asked the Minnesota Department of Health to review and comment on the issues related to Bassam Banat's P.E. December 22, 2005 report.
>
> I received a fax yesterday, the same date as your appeal denial letter, from Bassam Banat P.E. that states that I never told him what to write in his report.  Bassam Banat P.E. has told me that he is available to speak with anyone about the issues related to the report.  His telephone number is on his May, 15, 2006 letter attached.
>
> Gary Lokken, Minnesota Homeland Security, is currently reviewing the issues related to the December 22, 2005 report and has indicated he will submit a letter commenting on the issues also.  He stated he will need a few more days to submit his comments because he will be out of the office for personnel reasons.
>
> Gary Lokken has indicated that Glenn Sanders, U.S. Homeland Security, won't he back into his office until next week.  I will ask Glenn Sanders to comment on the December 22, 2005 report also.
>
> You have indicated that my appeal process is concluded. My question is who do I submit my summary and report related my comments on my termination as Public Works Deputy Director—Utilities when it is completed?  Do I submit the summary and report to you or the City Council since you concluded the appeal process?

> I would estimate that my summary and report would be completed sometime next
> week. As I have indicated, attached is Bassam Banat's letter I received yesterday.
> He is at a conference this week, but has stated he would be available next week to
> speak with you or anyone else about the issues.

As noted above, the Court, in an Order dated February 26, 2008, stated that "Hemmah's request to submit information to contest assertions made in his termination letter could be construed as a request for an opportunity to clear his name," and at trial the jury found that Hemmah did indeed request a name-clearing hearing.  However, because Defendants have not previously asserted qualified immunity, the Court has not considered whether Hemmah's letter may be reasonably interpreted as something other than a request for a name-clearing hearing.  The Court now concludes that it may.  While the jury found that Kuhlmann and Seymour each actually believed that Hemmah requested a name-clearing hearing, subjective beliefs are irrelevant for purposes of qualified immunity.  Because a reasonable official could mistakenly conclude that the letter did not request a name-clearing hearing, Kuhlmann and Seymour are entitled to judgment as a matter of law on qualified immunity grounds.  *Cf. Johnson v. Schneiderheinz*, 102 F.3d 340, 341 (8th Cir. 1996) ("It is well settled that law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quotation marks omitted)).

**E.    Damages after August 2006**

Defendants argue that, contrary to the jury's verdict, the evidence at trial established that Hemmah was offered a name-clearing hearing in August 2006.  Defendants further argue that Hemmah may not recover damages incurred after Defendants offered that hearing.

In a letter dated August 15, 2006, counsel for the City of Red Wing sent counsel for Hemmah a letter that stated in part:

> [I]f Mr. Hemmah would like to address the City Council for purposes of his
> liberty interest (i.e., a name-clearing hearing) the City will provide this process.
> The City is prepared to put on the agenda for its next regularly scheduled council

meeting on August 28, 2006, Mr. Hemmah's opportunity for a name-clearing
hearing.  Please let me know as soon as possible if Mr. Hemmah will be
exercising his right to this hearing.  In addition, City practices typically limit
public address to the council to five minutes duration.  Please let me know if your
client will be requesting additional time and I will forward your request on to the
City for consideration.

Counsel for the City of Red Wing sent a second letter to counsel for Hemmah on August 24,

2006, confirming Hemmah's failure to request a name-clearing hearing at the August 28 council

meeting and stating:

The offer to provide such a hearing remains open.  Please let me know when, and
if, your client will be requesting a name-clearing hearing and any proposal you
may have for the format and timing of such a hearing.

Hemmah does not dispute that his attorney received these letters, and he testified that his lawyer

informed him of Defendants' willingness to provide him with a name-clearing hearing.[4]

Hemmah argues instead that the hearing offered in August 2006 would have been legally

inadequate.  Due process requires a hearing "at a meaningful time and in a meaningful manner."

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  The evidence does not support a conclusion that

the format of the hearing offered by Defendants was legally inadequate, especially given the

uncontradicted evidence of Defendants' willingness to consider Hemmah's suggestions on that

matter.[5]  *See Hammer*, 318 F.3d at 840 ("All that is required is that the aggrieved party be

---

[4]      The Court has federal question jurisdiction over this case.  *See* 28 U.S.C. § 1331 (2000).
Therefore, the common law of attorney-client privilege applies.  *See* Fed. R. Evid. 501; *Willy v.
Admin. Rev. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005).  By asserting that Defendants failed to offer
him a name-clearing hearing, Hemmah waived his attorney-client privilege with respect to
communications regarding these letters.  *See Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d
143, 151 (D.C. Cir. 1997) ("Under the common-law doctrine of implied waiver, the attorney-
client privilege is waived when the client places otherwise privileged matters in controversy.").

[5]      Hemmah testified that his counsel informed him that Defendants offered only a "public
comment period" of "five minutes."  Even if such a hearing would not have been adequate, the
evidence establishes that Defendant's offer was not limited to a five-minute public comment
period.  Defendants are not responsible for any inadequacies in communication between

offered a chance to refute the charges against him or her."); *Campbell v. Pierce County*, 741 F.2d 1342, 1345 (11th Cir. 1984) ("In cases involving only liberty interests, the courts have required only that the claimant be accorded notice of the charges against him and an opportunity to support his allegations by argument however brief, and, if need be, by proof, however informal." (quotation marks omitted)).  Moreover, Defendants' offer necessarily came at a meaningful time, as the jury concluded that failure to receive a name-clearing hearing caused Hemmah, subsequent to August 2006, damages in the amount of $150,000.[6]

Accordingly, the evidence establishes that Defendants offered Hemmah a name-clearing hearing in August 2006, and the Court concludes that the jury's finding to the contrary is without legally sufficient evidentiary support.  The Court further concludes that Hemmah may not recover the damages incurred after he declined the offer of a hearing, which were determined by the jury to be $150,000.  *See Schleck*, 939 F.2d at 643 ("That [a name-clearing hearing] never was conducted because Schleck and Kraft declined to avail themselves of it does not give rise to a due process violation."); *cf. C.L. Maddox, Inc. v. Benham Group, Inc.*, 88 F.3d 592, 603 (8th Cir. 1996) ("When it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, district courts possess the power to reduce the amount of the verdict accordingly.").

---

Hemmah and his attorney, including any misunderstanding or misrecollection that Hemmah may have had regarding those communications.  *Cf. Rodgers v. Curators of U. of Mo.*, 135 F.3d 1216, 1220 (8th Cir. 1998) (indicating that an attorney is an agent of his or her client); Minn. R. Prof. Conduct 1.4 (stating the duty of an attorney to communicate with clients).

[6]    Citing *Winskowski*, 442 F.3d at 1112, Hemmah asserts that Defendants were required to offer a name-clearing hearing before commencement of litigation.  Hemmah is mistaken. *Winskowski* states only that a *plaintiff* must *request* a hearing before filing suit, *see id.*, and a plaintiff's duty to mitigate damages does not end when a lawsuit begins.

**F.      Damages between May 2006 and August 2006**

Defendants argue that the remaining award of $100,000 in damages—damages incurred between the time Hemmah was denied a hearing in May 2006 and the time he was offered a hearing in August 2006—is not supported by legally sufficient evidence.  While any plaintiff who proves that his or her procedural due process rights have been violated is entitled to nominal damages and attorney fees, a plaintiff must establish "actual injury" before substantial compensatory damages may be recovered; such damages will not be presumed.  *Skeets v. Johnson*, 805 F.2d 767, 781 (8th Cir. 1986).  Moreover, damages are limited to those caused by the denial of procedural due process itself.  *Brewer v. Chauvin*, 938 F.2d 860, 864 (8th Cir. 1991).  Damages due to some other cause, such as the loss of public employment, are not recoverable.  *Id.*

The Court concludes that Hemmah presented evidence of actual injury.  Specifically, the Court is satisfied that Hemmah proved mental and emotional suffering caused by not only the loss of his job but also by the denial of an opportunity to contest the accusations against him.  *Cf. Carey v. Piphus*, 435 U.S. 247, 263-64 (1978) (indicating that mental and emotional distress may constitute actual injury); *Brewer*, 938 F.2d at 864 ("[D]amages that are proved to have been caused by the denial of procedural due process may be recovered (*e.g.,* mental or emotional distress).").

However, the evidence presented at trial did not prove that, had Hemmah received a name-clearing hearing, Defendants would have rescinded their decision to terminate Hemmah for misconduct.[7]  As a result, Hemmah failed to establish a causal link between violation of his

---

[7]      Hemmah's testimony, for example, indicated that he did not know if Defendants' decision to terminate him for misconduct would have been reversed had he received a name-

procedural due process rights and much of his evidence regarding damages.  For example, Hemmah testified that, because he was terminated "not in good standing," he was denied severance pay in the amount of $13,300.  Hemmah's testimony further indicated that his termination from his position as a paid on call fire fighter, precipitated by his purported misconduct as Deputy Director for Public Works—Utilities, prevented him from achieving enough service time to receive an increase in his fire fighter pension, which Hemmah indicated cost him $28,600.  In addition, Hemmah established that he unsuccessfully sought new employment with multiple employers after his termination.  However, the evidence suggested that in one instance he was denied employment because he had been terminated for misconduct, and, in other instances, it was unclear why he was denied employment.

Hemmah's procedural due process right to a name-clearing hearing neither obligated Defendants to revisit their reasons for terminating him nor prohibited them from being mistaken in evaluating the reasons for his termination.  *See Hammer*, 318 F.3d at 840 ("[T]he Board was not required to reconsider its decision to terminate Hammer in order for the hearing to pass constitutional muster.").  To the contrary, Hemmah's right to a name-clearing hearing entitled him to an *opportunity* to dispute the charges against him and nothing more.  *See id*.  As the Supreme Court stated in *Bishop v. Wood*, 426 U.S. 341 (1976):

> The truth or falsity of the [defendant's] statement determines whether or not his decision to discharge the [plaintiff] was correct or prudent, but neither enhances nor diminishes [the plaintiff's] claim that his constitutionally protected interest in liberty has been impaired.  A contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake.
>
> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.  We must accept the harsh fact that numerous individual mistakes are inevitable in the day-

clearing hearing.  In addition, Kuhlmann's testimony indicated that her belief that Hemmah had been dishonest persisted throughout trial.

> to-day administration of our affairs. The United States Constitution cannot
> feasibly be construed to require federal judicial review for every such error.  In
> the absence of any claim that the public employer was motivated by a desire to
> curtail or to penalize the exercise of an employee's constitutionally protected
> rights, we must presume that official action was regular and, if erroneous, can best
> be corrected in other ways.  The Due Process Clause of the Fourteenth
> Amendment is not a guarantee against incorrect or ill-advised personnel
> decisions.

*Id.* at 349-50 (footnotes omitted).  Indeed, the Supreme Court suggested that a public employee's

remedies are no greater even when the public employer's stigmatizing allegations against him or

her are deliberate lies.  *See id.* at 349 n.13.

Accordingly, the only injuries to Hemmah that were adequately supported by the

evidence are his mental and emotional distress over the period from May 2006 to August 2006,

at which time, as noted above, Hemmah was offered a name-clearing hearing.  The Court notes

that Hemmah's distress did not manifest itself physically, and, during trial and his closing

argument, Hemmah devoted significant attention to damages that were not proven recoverable,

as noted above.  In addition, while Hemmah was distraught over violation of his due process

rights, the evidence also demonstrated that he experienced significant mental suffering for

reasons other than denial of a name-clearing hearing, as evidence showed that Hemmah was

distressed before he had even requested a hearing.  Under these circumstances, damages in the

amount of $100,000 are so excessive as to be conscience shocking.  *Cf. Delph v. Dr. Pepper

Bottling Co.*, 130 F.3d 349, 357 (8th Cir. 1997) (holding, in a case where the jury found that the

plaintiff had been subjected to a hostile work environment culminating in his constructive

discharge, that a $150,000 award for emotional distress must be reduced to $50,000 where the

plaintiff experienced physical ailments of indeterminate cause and the plaintiff and his wife

testified to the plaintiff's "vague and ill-defined" emotional anguish, which was "not

characterized as especially intense"); *Rainone v. Potter*, 388 F. Supp. 2d 120, 126 (E.D.N.Y.

2005) ("A review of comparable cases which address verdicts for emotional distress damages show that, absent serious psychological injuries, such awards generally result in less than $50,000."). The Court concludes that remittitur in the amount of $50,000 is appropriate. Hemmah may accept damages in the amount of $50,000 or submit to a new trial on damages. *Cf. England v. Gulf & Western Mfg. Co.*, 728 F.2d 1026, 1029 (8th Cir. 1984) (indicating a new trial on damages alone may be appropriate where excessive damages award appeared to have been caused by confusion or miscalculation).

## II.   HEMMAH'S MOTION

Hemmah seeks to recover attorney fees and costs as the prevailing party in this action. *See* 42 U.S.C. § 1988 (2000); Fed. R. Civ. P. 54(d). Because a new trial on damages may yet be required, the Court concludes that Hemmah's motion is premature. *See Gill v. Maciejewski*, 546 F.3d 557, 565 (8th Cir. 2008) (stating that the amount of damages recovered "bear[s] on the quantum of fees awarded"); *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994) (vacating award of attorney fees and remanding for recalculation of fees following outcome of a new trial on damages).

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.   Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial [Docket No. 95] is GRANTED IN PART and DENIED IN PART.

2.   Defendants Kay Kuhlmann and Roger Seymour are entitled to judgment as a matter of law.

3.   The Judgment [Docket No. 94] is VACATED as to Kuhlmann and Seymour.

4.      Plaintiff Daniel Hemmah's claim for denial of a name-clearing hearing
        against Kuhlmann and Seymour is DISMISSED WITH PREJUDICE.

5.      Hemmah may not recover damages incurred after August 2006.  The
        remaining damage award is remitted to $50,000.  Hemmah is directed to
        either accept the remittitur, reducing his damage award, or ask the Court to
        schedule a new trial on the issue of damages.  Hemmah shall inform the
        Court in writing of his decision no later than January 16, 2009.  The Court
        will defer amending the Judgment with respect to Defendant City of Red
        Wing pending notification of Hemmah's position with regard to remittitur.

6.      To address the possibility that the portion of the Court's Order granting
        judgment as a matter of law could be vacated or reversed, the Court
        conditionally grants Defendants' motion for a new trial with respect to all
        Defendants on the issue of damages.  The Court is left with a definite and
        firm conviction that the jury has erred for reasons related to the sufficiency
        of the evidence on damages and on Defendants' purported offer of a
        name-clearing hearing in August of 2006.  The Court conditionally denies
        Defendants' motion for a new trial with respect to all Defendants on the
        issues of liability and qualified immunity as the relevant facts are not
        sufficiently in dispute.

7.      Plaintiff's Motion for Attorneys' Fees and Costs Under 42 U.S.C. § 1988
        [Docket No. 99] remains under advisement pending notification of
        Hemmah's position with regard to remittitur.

Dated:  December 30, 2008

                                            s/  Joan N.Ericksen
                                            JOAN N. ERICKSEN
                                            United States District Judge